UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
STEPHANIE FREUND, individually and derivatively :
On behalf of Nominal Defendant Morgen Evan & :
Company, Inc., :
 :
                    **Plaintiff,** :
 :      09 CV 7117 (HB)
     - against - :
 :
MARK LERNER, SHELDON KLEEGER, STANLEY :   OPINION &
TOBIN, BRUNO ZHENG WU, HANS BETHGE, :   ORDER
ATTILIO ARIETTI, BILL WEIRICH, MORGEN, :
EVAN INTERNATIONAL, INC., MORGEN EVAN :
KK (JAPAN), MORGEN EVAN REDROCK, INC., :
MORGEN EVAN HONGYAN CAPITAL, INC., :
YANG LAN, AMY LIU, CHARLOTTE LERNER, :
AMY LEVY KLEIN, JEAN JACQUES MONDOLONI, :
ARIETTI & PARTNERS, MATRIX CAPITAL :
MARKETS GROUP, NEXTMARKT, INC., :
ANGERMANN GMBH, TM CAPITAL CORP., :
MERGERS & ACQUISITIONS INTERNATIONAL, :
INC., ATVG, INC., YANG LAN HER VILLAGE :
MULTIMEDIA CO. LTD, WOMBAT CAPTAL, INC., :
REDROCK CAPITAL HOLDINGS LTD., and SUN :
MEDIA INVESTMENT HOLDINGS, LTD., :
 :
                    **Defendants,** :
and :
 :
MORGEN, EVAN & COMPANY, INC., :
 :
              **Nominal Defendant.** :
 :
------------------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

      In this case, the plaintiff, Stephanie Freund ("Plaintiff" or "Freund"), brings suit against her soon-to-be former husband, Mark Lerner ("Lerner"), and a raft of other individuals and entities that Lerner associated with professionally and personally. Freund brings thirteen causes of action against these defendants, including alleged violations of every section of the civil RICO statute, federal trademark infringement, and a variety of state law claims. According to Plaintiff, she and Lerner are each fifty-percent shareholders in a company they founded, Morgen, Evan &

Company, Inc. ("MECO"). Freund claims that Lerner, along with the other defendants, engaged in a scheme to divert business and money that was intended for MECO by doing business through a variety of other corporate entities and by committing tax fraud. Defendants Lerner, Morgen, Evan & Company, Inc., and Morgen, Evan International, Inc., move to dismiss the Amended Complaint for failure to state a claim. For the reasons that follow, the motion is GRANTED, and the case is DISMISSED.

## I. BACKGROUND

Plaintiff Freund is a resident of New York, while defendant Lerner, an investment banker, is a resident of Connecticut. Am. Compl. ¶¶ 59-60. The two were married in 1991, and are currently litigating their divorce in state court; Freund also maintains a separate civil suit in state court against Lerner. *Id.* ¶¶ 61, 130. In addition to Lerner, Plaintiff brings suit against a broad array of other defendants associated with her husband, including corporate entities formed by Lerner, a trade association, Mergers and Acquisitions International, Inc. ("M&A International"), business partners in Lerner's various endeavors, Lerner's accountant and business assistant, and Lerner's mother and sister. *Id.* ¶¶ 62-126. Freund's overarching claim is that the defendants engaged in a "racketeering scheme to siphon business, business opportunities, and millions upon millions of dollars from nominal defendant Morgen, Evan & Company, Inc." Am. Compl. ¶ 1. The alleged purpose of the scheme is to divert money and business from MECO, and by extension Freund, and to avoid paying taxes. *Id.* ¶ 9.

MECO was formed as an investment banking firm by Lerner and Freund in 1992. Am. Compl. ¶ 131. Plaintiff claims that she and Lerner were each fifty percent shareholders in MECO, and that Lerner was "at all times the principal" in the business. *Id.* ¶¶ 1, 100. While Freund claims she retains the fifty percent interest in the company, Lerner provides documents which indicate that he is currently the sole shareholder. *See* Decl. in Supp. of Mot. to Dismiss, Ex. D (Schedule K-1 Tax Filing). From 1992 to 2005, Plaintiff alleges that Lerner did "virtually" all his business through MECO, and that he ran the business with no role played by Freund. Am. Compl. ¶¶ 133-36. As a successful investment banker, Lerner completed a significant number of transactions through the company. *Id.* ¶¶ 17-19.

A. **Diversion of MECO Business to Other Corporate Entities**

Beginning in 2005, however, Lerner allegedly began to form a variety of other corporate entities "to further the RICO scheme and to assist in his violations of a series of other laws." Am. Compl. ¶ 211. Defendant Morgen Evan International ("MEI") was formed by Lerner in 2005, allegedly so that he could have a separate corporate entity from MECO that he could use to fund a third entity, defendant Morgen Evan Redrock, and to collect income and pay expenses outside of MECO and therefore "deprive [MECO] and thus Freund of her interest in the fruits of the transactions generating that income." *Id.* ¶¶ 212-215. Plaintiff claims MEI was the "wrongful beneficiary of significant amount of money," specifically because it received $525,000 in 2007 from various entities. *Id.* ¶¶ 221-22. Plaintiff further alleges that Lerner caused MEI "to finance [defendant] Wombat Capital and other entities, thereby investing funds which properly belonged to [MECO]." *Id.* ¶ 226. Lerner allegedly used MEI to assist him in hiding and moving substantial assets of MECO, including "to send tens of thousands of dollars" from MECO to MEI in 2007, and "many tens or hundreds of thousands of dollars since the creation of" MEI. *Id.* ¶¶ 234-36. According to Freund this "diversion of business … constitutes a flagrant violation of Lerner's fiduciary duties to [MECO]." *Id.* ¶ 219, 237 (also referring to these actions as "conversion"). MEI was used "both as a vehicle for the deposit of monies from deals which belong to [MECO] … and as a receptacle for monies Lerner has embezzled from [MECO]." Am. Compl. ¶ 238. Although MEI is a fairly successful entity according to Plaintiff, it allegedly claimed to have less than $1,000 in taxable income pursuant to a 2007 tax return, and "upon information and belief … similar inconsequential amount of revenue" in other years. *Id.* ¶¶ 227-28. Freund claims that the "inconsistency is explained by Kleeger & Tobin [Lerner's accountant and assistant, respectively] assisting Lerner in evading federal and state taxes owed by [MEI]" and by "treating the various Morgen Evan entities as divisions of [MECO]." *Id.* ¶¶ 230-31. Plaintiff also claims that Lerner, through a series of transactions between MECO and MEI "and various other entities, engaged in money laundering and tax evasion." *Id.* ¶ 232. Lerner also allegedly commingled personal funds and funds of other entities, including MECO, with MEI. *Id.* ¶ 233. All of the above, according to Freund, was in furtherance of "Lerner's RICO scheme." *Id.* ¶ 239.

Defendant Morgen Evan KK ("MEKK") was formed in or about 2007 "to provide a vehicle for Lerner to deposit corporate fees in a bank account overseas without the money being

3

sent to the United States," some of which were diverted from MECO to MEKK. Am. Compl. ¶¶ 240-41. Plaintiff alleges "upon information and belief" that Lerner commingled personal funds and funds of other entities, including MECO, with MEKK. *Id.* ¶ 242. MEKK allegedly "has served to further Lerner's RICO scheme" by "assisting in the movement of money out of the accounts of [MECO] and preventing monies from entering that account in the first place." *Id.* ¶ 243. Plaintiff claims that MEKK aided and abetted Lerner's violation of fiduciary duties to MECO. *Id.* ¶ 244.

Defendant Morgen Evan Redrock ("MERR") began in 2007 as a joint venture of MECO and defendant Redrock Capital Holdings. Am. Compl. ¶¶ 249, 251. Freund alleges that this venture by Lerner committed infringement of MECO trademark, though what trademark is not specifically delineated. *Id.* ¶ 255. As with the other entities, Freund alleges that "Lerner commingled personal funds and funds of other entities, including [MECO], with [MERR]." *Id.* ¶ 263. Plaintiff further claims that MERR, along with certain other individual defendants, "have conspired to and have in fact convert [sic] funds which belong to [MEI] in violation of RICO and a series of other state and federal laws." *Id.* ¶ 264. They "hold back fees, move money, extend loans and take other actions to hide money." *Id.* ¶ 265. In addition, "upon information and belief" defendant Bruno Zheng Wu, a business associate of Lerner, used MERR to "circumvent Chinese laws, including laws against tax evasion and money laundering." *Id.* ¶ 269.

Freund makes similar allegations about three other entities created by or associated with Lerner. Defendant Morgen Evan Hongyan ("MEH") was formed in 2007 by Lerner, Wu, and defendant M&A International, and was allegedly "set up as a shell corporation to do nothing but serve as a conduit for illegal fund transfers" and used to "circumvent various Chinese laws, including laws against tax evasion and money laundering." *Id.* ¶¶ 275-76. Defendant Nextmart, Inc. ("Nextmart") was formed by Wu prior to 2008 to sell clothing, but after 2008 "was designed to house financial business and thereby circumvent [MECO]." *Id.* ¶ 279. Specifically, in 2008 Lerner allegedly was "involved in the privatization of the Chinese national airline" and "caused the investment banking fees for this billion dollar deal to be funneled through Nextmart instead of through [MECO]." *Id.* ¶¶ 282-83. Finally, Freund claims that Lerner utilized defendant companies Wombat Capital, Inc. ("Wombat") and ATVG, Inc. ("ATVG") to divert funds allegedly earned by MECO. *See id.* ¶¶ 290-92.

### B. M&A International

Plaintiff also asserts that a trade association, defendant M&A International, was a participant and vehicle for Lerner's alleged RICO scheme. In 1999, Lerner, with Freund's knowledge, caused MECO to join M&A International; Lerner became President and Chairman of the association in 2001, and is currently the Vice President in charge of the Asia Pacific Region. Am. Compl. ¶¶ 173-75, 188. MECO, as well as other Morgen Evan entities, are members of M&A International. *Id.* ¶¶ 195-200. Plaintiff claims that Lerner changed the focus of M&A International's business operations, and that it now does business transactions by "in essence, becoming a huge international bank" with the members "becoming part of an informal financial network which does business, moves money, exchanges financial information and assists member firms in avoiding showing reportable monies." *Id.* ¶¶ 179-80. She alleges that Lerner has done a "considerable amount of business" through this organization using entities other than MECO, and that doing so "constitutes an illegal diversion of business" from MECO in violation of fiduciary duties "and in violation of a series of other laws." *Id.* ¶¶ 191-93. M&A International, according to Plaintiff, "provided and provides crucial assistance to the scheme by serving as a crucial conduit for moving vast amounts of money between people, corporate entities and countries in order to assist Mr. Lerner in avoiding federal and state taxes and to assist in his divorce planning." *Id.* ¶ 208.

According to Freund, other individuals associated with M&A International assisted Lerner in keeping money away from MECO. The current M&A International Chairman, defendant Hans Bethge, along with various other individual defendants who Plaintiff refers to as the "M&A 8," allegedly "worked with Lerner to obscure and divert investment banking fees" and "divert[] business from [MECO] to other entities controlled in whole or in part by Lerner." Am. Compl. ¶¶ 203-04. Additionally, Bethge alleged gave over $200,000 to Lerner that was earned by MECO, and was given "a relatively small amount at a time, through various entities" for the purpose of precluding MECO and Freund from enjoying the "fruits of [MECO's] business success and to avoid tax liability." *Id.* ¶¶ 205-07. As a result, M&A International and these individual defendants allegedly violated a series of laws "including but not limited to laws forbidding mail and wire fraud … money laundering … and prohibitions against unlicensed money transmitting business [sic]." *Id.* ¶ 209.

### C. Tax-Related Fraud

Freund also makes a broad array of allegations related to tax fraud. Freund claims that Lerner is very wealthy and that he has made fraudulent claims on his personal tax returns. Am. Compl. ¶¶ 309-46. Plaintiff also alleges that MECO's tax returns and the tax returns of other Morgen Evan entities are also somehow fraudulent. *Id.* ¶¶ 348-59. She claims individual defendants Sheldon Kleeger and Stanley Tobin, Lerner's accountant and assistant, filed false tax returns at Lerner's behest for MECO and the other entities, and also that Kleeger and Tobin assisted in illegal wire transfers and efforts "to hide money from [MECO] and to illegally move money around the world." *Id.* ¶¶ 360-71. These two defendants also allegedly "shielded" money paid by Lerner to his mother and sister, also defendants in this action, from applicable income and gift taxes. *Id.* ¶ 382. "In recent years," Plaintiff alleges, Lerner has "made a series of sizable payments in cash … to various individuals, as part of his scheme, in violation of RICO, to plunder the assets of [MECO] and to avoid taxes thereon," including payments to his mother, sister, and "one of Lerner's girlfriends." *Id.* ¶ 418. Finally, Lerner allegedly took out loans to himself from MECO, which Freund never approved, and "upon information and belief, not a single dollar of these loans have ever been repaid." *Id.* ¶¶ 386-93. Freund claims this amounts to embezzlement and, because the loans were allegedly not reported on Lerner's personal tax returns, constitute the use of mail and wires to commit tax fraud. *Id.* ¶¶ 394, 397.

### D. Other Allegedly Relevant Acts

Lastly, Plaintiff makes a series of claims that do not fit any of the above categories, but are allegedly related to the RICO claims. Most dramatically, Freund claims that Lerner set fire to the apartment that they lived in together with their children. Am. Compl. ¶¶ 427-29. Lerner also repeatedly requested the return of a corporate notebook from Freund, and for her to turn over her interest in MECO ownership, and allegedly threatened their children if she did not do so. *Id.* ¶ 437. Lerner also allegedly claimed to have bribed a variety of parties, such as the "Law Guardian" and "Matrimonial Judge," involved in the couple's divorce proceedings. *Id.* ¶¶ 438-440. Plaintiff claims that Lerner repeatedly lied in pleadings in the divorce action, and that this alleged "perjury" served to further the RICO scheme and to hide MECO assets. *Id.* ¶¶ 441-42.

### E. Claims

Based on the above, Freund alleges violations of each section of the RICO statute. *See* 18 U.S.C. § 1962(a), (b), (c), and (d). Plaintiff also alleges trademark infringement in violation of federal law. Additionally, Plaintiff brings state law causes of action for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conversion, trespass to chattel, intentional infliction of emotional distress, unjust enrichment, and professional malpractice. Freund also seeks an accounting of MECO. The original complaint in this action was filed on August 12, 2009. Following a motion to dismiss by the defendants, Plaintiff filed an amended complaint on January 6, 2010 as allowed by my individual practices. On February 2, 2010, defendants Lerner, MECO, and MEI moved to dismiss the Amended Complaint for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. LEGAL STANDARD

A complaint will be dismissed under Rule 12(b)(6) if there is a "failure to state a claim upon which relief can be granted." Fed.R.Civ.P.12(b)(6). To survive a motion to dismiss on this ground, a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Where the court finds well-pleaded factual allegations, it should assume their veracity and determine whether they "plausibly give rise to an entitlement to relief." *Id.* at 1950. To decide the motion to dismiss, a court may consider "any written instrument attached to [the complaint] as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sira v. Morton,* 380 F.3d 57, 67 (2d Cir. 2004) (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," however, dismissal is appropriate. *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1950.).

## III. DISCUSSION

At the outset, it is worth taking a brief moment to describe the overall nature of the Amended Complaint.  Plaintiff brings suit against twenty-eight individual and corporate defendants for thirteen causes of action, alleged in over five hundred and fifty paragraphs over the course of eighty-seven pages.  Despite the many defendants named in the Amended Complaint, apparently only Lerner and MEI have been served with process, notwithstanding that it has been nearly a year since Plaintiff's complaint was filed and over six-months since the Amended Complaint was filed.  Freund brings suit for violations of all four sections of the RICO statute, as well as federal trademark infringement.  This created federal question subject matter jurisdiction and ensured, at least initially, that this non-diverse case would not be sent to the New York state courts where there is already a matrimonial action and civil suit that involves both Freund and Lerner.  Plaintiff almost immediately jettisoned some of these federal claims, expressly stating that she did not object to the dismissal of either the trademark infringement claim nor the § 1962(a) RICO claim.[1]  In sum, the overall tenor of the Amended Complaint suggests at best extremely sloppy pleading, and at worst a deliberate attempt to "throw the book" at Lerner and hope that something sticks, particularly with the RICO statute and its opportunity for treble damages.  Unfortunately for Plaintiff, a lengthy complaint full of vague allegations is insufficient to state a civil RICO claim, and thus eliminates any need for federal jurisdiction over this lawsuit.

**A. Civil RICO**

"Any person injured in his business or property by reason of a violation of section 1962" may sue for treble damages under the Racketeering Influenced and Corrupt Organizations Act, or "RICO."  18 U.S.C. § 1964(c).  A plaintiff must allege "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962."  *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008)).  A "person" may violate the RICO statute by utilizing a pattern of racketeering activity, or proceeds thereof, to infiltrate an interstate enterprise by (a) investing income derived from a pattern of racketeering activity; (b) acquiring or maintaining an interest in the enterprise through a pattern of racketeering activity; (c) conducting the affairs of the enterprise through a

---

[1] Based on this voluntary acquiescence, Plaintiff's federal trademark infringement claim, and her § 1962(a) RICO claim, are dismissed for failure to state a claim.

8

pattern of racketeering activity; or (d) conspiring to commit any of the above acts. *See* 18 U.S.C. § 1962. "A plaintiff claiming a civil RICO violation must allege each of the claim's elements, including '(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity.'" *Bernstein v. New York,* 591 F. Supp. 2d 448, 461 (S.D.N.Y. 2008) (quoting *Anatian v. Coutts Bank (Switzerland) Ltd.,* 193 F.3d 85, 88 (2d Cir. 1999)); *see also Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985). As noted above, Plaintiff alleges that defendants engaged in all four types of prohibited conduct. "Because the mere assertion of a RICO claim … has an almost inevitable stigmatizing effect on those named as defendants, … courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 537 (S.D.N.Y. 2001) (quoting *Schmidt v. Fleet Bank,* 16 F. Supp. 2d 340, 346 (S.D.N.Y.1998)).

### B. Failure to Plead a RICO Enterprise

"Any principled analysis of a RICO claim … must begin from an understanding of what enterprise is alleged." *Spira v. Nick*, 876 F. Supp. 553, 561 (S.D.N.Y. 1995). An enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004) (internal quotations omitted); *see also* 18 U.S.C. § 1961(4). It is identified "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). In this case, plaintiff attempts to allege an "association-in-fact" enterprise, which is a "group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 129 S.Ct. 2237, 2243 (2009) (quoting *Turkette*, 452 U.S. at 583). An association-in-fact enterprise must have an ascertainable structure, which necessitates a showing of three structural components: (1) a purpose; (2) a relationship among those associated with the enterprise; and (3) sufficient longevity to permit these associates to pursue the enterprise's purposes. *Boyle*, 129 S.Ct. at 2244. There must also be a "nexus…between the enterprise and the racketeering activity that is being conducted." *First Capital*, 385 F.3d at 173-74.

Despite the many pages in this complaint, and the many defendants Plaintiff trains her sights on, there are insufficient factual allegations to plausibly infer the existence of a RICO

enterprise.  The only clear statement as to a RICO enterprise is where Plaintiff states, with regard to her § 1962(c) claim, "the natural person and entity defendants together are an enterprise within the meaning of 18 U.S.C. § 1961."  Am. Compl. ¶ 468.  Simply stating in conclusory fashion that all the defendants are an "enterprise within the meaning" of the RICO statute is insufficient, absent some factual allegations in support.  In another section of the complaint, Plaintiff states that Lerner "[a]cquire[d] control of various other Morgen Evan entities, including but not limited to Morgen Evan Redrock, Morgen Evan Hongyan, Morgen Evan International" as well as "including but not limited to Nextmart, Wombat Capital, ATVG, Hurray! and, upon information and belief entities unknown to plaintiffs at this time." *Id.* ¶¶ 461-62.  While Plaintiff's complaint hints at a few different enterprises, a careful inspection reveals that there are insufficient facts to infer the existence of even one of them..   Put another way, "while there are any number of partnerships, corporations, and groups thereof that could constitute RICO enterprises, we are left to guess at the enterprise or enterprises that are the subject of plaintiff's RICO claim." *Spira*, 876 F. Supp. at 561.

More specifically, nowhere does Freund provide factual allegations that demonstrate a discernible or ascertainable enterprise.  There are no allegations which would plausibly suggest some overall "functional unit" as required by *Turkette*.  *See* 452 U.S. at 583.  "[Her] pleadings are entirely silent as to the internal workings or organization of the alleged enterprise, explaining neither how it was run nor by whom." *Greenberg v. Blake*, No. 09 Civ. 4347(BMC), 2010 WL 2400064, at *6 (E.D.N.Y. June 10, 2010) (citing *First Capital,* 385 F.3d at 174-75).  Moreover, the allegations do not "clearly differentiate between the 'persons' and the 'enterprise' as separate and distinct entities." *Nasik*, 65 F. Supp. 2d at 539.  Indeed, as noted *supra*, the one express allegation as to the nature of the enterprise simply equates the enterprise and defendant persons, an improper pleading under both § 1962(b) and (c), the two substantive RICO claims Plaintiff seeks to maintain.  *See, e.g., Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161-62 (2001) ("to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a "person"; and (2) an "enterprise" that is not simply the same "person" referred to by a different name"); *Official Publications, Inc. v. Kable News Co.*, 884 F.2d 664, 668 (2d Cir. 1989) (suggesting, without deciding, that enterprise and person must be distinct under § 1962(b) as well); *Lavian v. Haghnazari*, 884 F.Supp. 670, 684 (E.D.N.Y. 1995) ("under

10

18 U.S.C. § 1962(b) or (c) … for purposes of these subsections, a defendant may not be both a 'person' and an 'enterprise.'").

While Freund attempts to connect each and every defendant back to Lerner, nowhere does she allege facts to demonstrate a relationship between the various defendants and the supposed association-in-fact enterprise. *See Automated Teller Mach. Advantage LLC v. Moore*, No. 08 Civ. 3340(RMB(FM), 2009 WL 2431513, at \*7 (S.D.N.Y. Aug. 6, 2009) (relationship means the relationship within the enterprise, i.e. the roles played by each member in the alleged RICO scheme). The fact that Plaintiff brings RICO claims against twenty-eight different individual and entity defendants —who are citizens of various nations, operate or employed in different businesses, and are often of no obvious relationship to each other beyond their independent relationships to Lerner— makes it even more unbelievable and unlikely that they are collectively an association-in-fact enterprise absent some factual allegations to suggest some relationship between them. *See Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 306 (S.D.N.Y. 2010) (allegations that one party was leader and noting others were associated with same address is insufficient to demonstrate "relationship" within enterprise). "[O]ther than conclusory allegations, nothing in the complaint addresses the relationships among defendants in a manner that distinguishes between the 'enterprise' and the 'person' who conducted the affairs of the enterprise through a pattern of racketeering." *Singh v. Parnes*, 199 F. Supp. 2d 152, 162 (S.D.N.Y. 2002) (internal citations omitted).

Ultimately, this action appears to be, at best, the "putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb." *Nasik*, 165 F. Supp. 2d at 537 (internal quotation omitted). There are no factual allegations to show the necessary structural components of an enterprise, and the complaint appears to be an attempt to allege a variety of state law claims against numerous individuals and entities with the hope that some of these vague allegations will amount to a RICO violation. Whatever the merits of the these underlying allegations, "Plaintiffs' conclusory naming of a string of entities does not adequately allege an enterprise." *First Capital*, 385 F.3d at 175 (internal citations omitted); *see also Nasik*, 165 F. Supp. 2d at 539 (plaintiff "strung together all of the defendants in this action and labeled the resulting group an association-in-fact enterprise").

### C. Other RICO Pleading Issues

While defendant's motion is granted because plaintiff fails to adequately plead a RICO enterprise, it is worth noting that this is far from the only deficiency, and I could just as well dismiss this case on a variety of other grounds. For instance, all of the injuries that are factually alleged are with respect to MECO, not Freund, and RICO claims may not be brought on behalf of the corporation by a shareholder.[2]  *See, e.g., In re Interpictures Inc.*, 217 F.3d 74, 76 (2d Cir. 2000) ("even if we assume that appellant is a majority shareholder of the debtor and that he is seeking to prosecute the RICO claim on the debtor's behalf, he still cannot be said to have a possessory interest in the claim"); *Manson v. Stacescu*, 11 F.3d 1127, 1131 (2d Cir. 1993) ("A shareholder generally does not have standing to bring an individual action under RICO to redress injuries to the corporation in which he owns stock … even when the plaintiff is the sole shareholder of the injured corporation."). Further, Freund claims the predicate acts that demonstrate a pattern of racketeering activity are wire and mail fraud. *See* Am. Compl. ¶ 397; Pl.'s Mem. of Law in Opp. to Lerner Defs.' Mot. to Dismiss, at 4 ("the [Amended Complaint] alleges with great detail that Lerner committed mail and wire fraud"). RICO predicate acts sounding in fraud must be plead with sufficient particularity under Rule 9(b), and Freund fails to do so here. *See, e.g., First Capital,* 385 F.3d at 178 ("[A]ll allegations of fraudulent predicate acts[ ] are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)."). These are only two more of the many problems with this pleading, but it is more than sufficient to show why it must be dismissed for failure to state a claim.

### D. RICO Conspiracy

Plaintiff also alleges a conspiracy to violate RICO by all of the defendants other than Lerner's mother and sister. *See* 18 U.S.C. § 1962(d). This claim must also be dismissed because Plaintiff has failed to allege a satisfactory, substantive RICO claim. *See, e.g., Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F.Supp.2d 300, 312 (S.D.N.Y. 2009) ("a plaintiff's RICO conspiracy claim fails if the plaintiff's substantive RICO claims are deficient") (internal citations omitted); *Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 462 (S.D.N.Y. 2008) ("There can be no RICO conspiracy without a substantive RICO violation.") (internal quotations omitted).

---

[2] To the extent Freund seeks to bring suit derivatively, she has failed to satisfy the particularity requirements of Rule 23.1 of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 23.1.

### E. Service Issues

To the extent the motion to dismiss is not brought on behalf of certain unserved parties, claims against those parties are likewise dismissed for failure to effect timely service. *See* Fed.R.Civ.P. 4(m); *see also Zapata v. City of New York*, 502 F.3d 192, 195 (2d Cir. 2007).

### F. Pendant State Law Claims

Since Freund voluntarily concedes that her federal trademark infringement and § 1962(a) RICO claim must be dismissed, and her other federal RICO claims must also be dismissed as a matter of law, only Plaintiff's state law claims remain. "Generally, where federal claims are dismissed at an early stage, courts decline supplemental jurisdiction and dismiss pendant state law claims without prejudice." *Pu v. Charles H. Greenthal Mgmt. Corp.*, No. 08 Civ. 10084(RJH)(RLE), 2010 WL 774335, at *5 (S.D.N.Y. Mar. 9, 2010) (citing *Marcus v. AT & T Corp.*, 138 F.3d 46, 57 (2d Cir.1998)). Plaintiff provides no sound reasons why the state claims should be maintained in this court. They are likewise dismissed.

### G. Sanctions

Defendants' application for sanctions here is by no means far-fetched. The verbose, unlawyer-like pleading is an exercise in spleen venting and little else. In a very real sense it demeans the Federal Rules and to an extent the Judiciary. All that said, I have to assume the effort was in large part made in good faith. The case is now resolved and sanctions would do little more than gild the lily, and are denied.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

The Clerk of the Court is instructed to close this case and remove it from my docket.

**SO ORDERED**
August  10 , 2010
New York, New York

Hon. Harold Baer, Jr.
U.S.D.J.

13